# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| Western Surety Company, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 2:12-cv-2561-PMD |
| | ) | |
| v. | ) | |
| | ) | |
| Cooper River Construction Company, Inc., | ) | **ORDER** |
| Edward Southard Sr., and | ) | |
| Patricia P. Southard, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court upon Plaintiff Western Surety Company's ("Western Surety") motion for summary judgment ("Motion") against Defendants Cooper River Construction Company, Inc. ("Cooper River"), Edward Southard Sr., and Patricia P. Southard (collectively, "Defendants" or "Indemnitors"). For the reasons set forth below, the Court grants Western Surety's Motion.

## BACKGROUND

On October 1, 2009, Western Surety issued payment and performance bonds to Cooper River for several state road improvement projects. Each Defendant executed a General Agreement of Indemnity ("GAI") to induce Western Surety to issue these and other bonds. The Indemnitors admit to the existence of the bonds and the applicability of the GAI to the projects covered by those bonds.

Banks Construction, a subcontractor for Cooper River, made several claims for payment against Western Surety and Cooper River. Western Surety demanded that the Indemnitors deposit with it sufficient collateral with regard to these claims. The Indemnitors refused to

1

deposit collateral with Western Surety.  Western Surety eventually satisfied $218,028.14 of Banks Construction's claims against Western Surety.

Cooper River entered into a settlement agreement on May 10, 2012, in which it agreed to pay $40,000 to satisfy claims of the Dorchester County Tax Authority for a project known as Gum Branch.  Performance on the settlement agreement would have settled the Dorchester County Tax Authority's claims against Western Surety; however, Cooper River did not timely tender funds as it had agreed.  On March 13, 2013, ten months after the settlement agreement was executed, Western Surety paid the funds and took assignment of the settlement agreement.  Cooper River thereafter reimbursed Western Surety in the amount of $40,000.  However, Cooper River did not reimburse Western Surety for the attorneys' fees expended in the enforcement of the settlement agreement.

Western Surety filed this action on September 5, 2012, asserting causes of action for breach of contract and specific performance.  In its complaint, Western Surety alleges that, pursuant to the terms of the GAI, it is entitled to be reimbursed by Cooper River, its principal, and the individual Defendants for all sums Western Surety has expended and must expend, as surety, by reason of having executed the bonds.  On May 6, 2013, Western Surety filed the instant motion for summary judgment.  Defendants filed their response on May 21, 2013, and Western Surety filed a reply affidavit on June 7, 2013.  The Motion is ripe for judgment.

## **JURISDICTION**

This Court has subject matter jurisdiction over this matter based on 28 U.S.C. § 1332, as there is complete diversity of the parties and the amount in controversy exceeds $75,000.  Western Surety is a corporation with its principal place of business in Chicago, Illinois.  Cooper River is a corporation organized under the laws of South Carolina with its principal place of

business in Berkeley County, South Carolina, and individual Defendants Edward L. Southard Sr. and Patricia P. Southard are residents of Berkeley County, South Carolina. Thus, this Court has diversity jurisdiction over this case.

## STANDARD OF REVIEW

To grant a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## ANALYSIS

### I.     General Principles of South Carolina Contract Law

Because this action falls under the diversity jurisdiction granted to the federal courts by 28 U.S.C. § 1332, the Court looks to the law of South Carolina to determine the standards by which to evaluate the contract. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Under South Carolina law, an indemnity contract is construed in accordance with the rules of contract construction in general. *Campbell v. Beacon Mfg. Co., Inc.*, 438 S.E.2d 271, 272 (S.C. Ct. App. 1993). "Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect." *McGill v. Moore*, 672 S.E.2d 571, 574 (S.C. 2009). "The

court's duty is to enforce the contract made by the parties regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully." *Ellis v. Taylor*, 449 S.E.2d 487, 488 (S.C. 1994).

There exists in every contract an implied covenant of good faith and fair dealing. *Adams v. G.J. Creel & Sons, Inc.*, 465 S.E.2d 84, 85 (S.C. 1995). "However, there is no breach of an implied covenant of good faith where a party to a contract has done what [the] provisions of the contract expressly gave him the right to do." *Id.* Where there is an express indemnification contract, "a surety is entitled to stand upon the letter of his contract." *Fidelity & Deposit Co. of Md. v. Bristol Steel & Ironworks, Inc.*, 722 F.2d 1160, 1163 (4th Cir. 1983). Provisions of an indemnity contract allowing a surety the unilateral right to pay claims have been uniformly sustained and upheld, except where the payments were made through fraud or lack of good faith. *Id.*; *see Masterclean, Inc. v. Star Ins. Co.*, 556 S.E.2d 371, 376-77 (S.C. 2001) (observing that "a principal is not precluded from using bad faith as a shield in contract against a surety seeking indemnification").

## II.    Claim for Breach of Contract

Western Surety maintains that the Indemnitors breached their contractual obligation to reimburse Western Surety for funds expended in satisfying claims against Cooper River and the bonds. According to Western Surety, it evaluated and paid the bond claims in accordance with its obligations under the respective bonds, and its decision to pay Banks Construction $218,028.34 is binding upon the Indemnitors under the language of the GAI. In their response memorandum, Defendants concede that "the language of the [GAI] allows Plaintiff to determine, in its sole discretion, which claims should and which should not be paid, and makes that decision binding upon Defendants." Defs.' Resp. Memo. 1, dkt. 13. However, Defendants maintain that

Western Surety breached the implied covenant of good faith and fair dealing contained in its contract with Defendants by paying Banks Construction's claim without first investigating the validity of that claim. According to Defendants, had Western Surety investigated the claim, it would have found that although Defendants had not paid Banks Construction the full contract amount, they withheld money because Banks Construction was solely responsible for the liquidated damages charged to Defendants for completion delays. Although Defendants acknowledge that Western Surety was not contractually required to perform any investigation into the validity of a claim before making a payment, they argue that the failure to conduct such an investigation or take any steps to ensure that the charge was valid was a breach of the covenant of good faith and fair dealing. Defendants conclude that they should not be held liable for reimbursement of sums they would not have had to pay but for Western Surety's intervention.

Under the terms of the GAI, the Indemnitors agreed to "indemnify and save [Western Surety] harmless from and against every claim . . . which the Company may pay or incur in consequence of having executed or procured the execution of such bonds." GAI ¶ 2, dkt. 12-1. The GAI further provides: "Payment shall be made to the Company by the Indemnitors as soon as liability exists or is asserted against the Company, whether or not the Company shall have made any payment therefor." *Id.* ¶ 3. Paragraph 5 of the GAI clearly states that Western Surety "shall have the exclusive right to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Principal upon such bond shall be settled or defended and its decision shall be binding and conclusive upon the Indemnitors." *Id.* ¶ 5. Thus, the unambiguous, express language of the indemnification agreement gives Western Surety the unilateral right to pay claims against the bonds and to seek reimbursement from the Indemnitors.

5

The Court will uphold these provisions and Western Surety's decision to make payments on the bonds in the amount of $218,028.34 unless Defendants can show that the payments were made through a lack of good faith. *See Bristol Steel*, 722 F.2d at 1163; *Masterclean*, 556 S.E.2d at 376-77.

Defendants have failed to put forth evidence creating a genuine issue of fact regarding Western Surety's good faith. In his affidavit, Defendant Edward Southard stated that the claims submitted to Western Surety by Banks Construction were paid without investigation and "within a few days of their submittal, despite objection from Defendants that portions of the amounts being paid were being disputed." Southard Aff. 1 ¶¶ 3-4, dkt. 13-1. However, Defendants provide no evidence to support this assertion. Instead, the record evidence reveals that Western Surety performed a four-month investigation prior to paying the larger claim for $199,616.15.

Western Surety received formal notice of Banks Construction's larger claim on January 31, 2011, and the claim was paid more than four months later on or about June 7, 2011, for $199,616.15. *See* Banks Jan. 26, 2011 Ltr., dkt. 18-1; Gadocky 2d Aff. ¶ 9, dkt. 18-7. During the four-month investigation, Western Surety twice requested documentation from Defendants that would support their objections, but Defendants never responded. *See* Western Surety Apr. 21, 2011 Ltr., dkt. 18-2; Gardocky May 17, 2011 Email, dkt. 18-3; Gardocky 2d Aff. ¶ 9. Banks Construction, on the other hand, provided Western Surety with proof of its claim that Cooper River owed Banks Construction a balance of $199,616.15. Banks Apr. 6, 2011 Ltr., dkt. 18-5. Thus, the record evidence refutes Defendants' contention that Western Surety paid Banks Construction's larger claim without first conducting an investigation.

As for Banks Construction's smaller claim, the evidence in the record shows that as of January 16, 2012, Edward Southard acknowledged that it owed Banks Construction $18,412.19

6

and further stated in an email that Defendants intended to pay Banks Construction the remainder of this balance. Southard Jan. 16, 2012 Email, dkt. 18-6. Nonetheless, Defendants never paid this balance, and Western Surety paid the claim on March 2, 2012. There is no evidence in the record, beyond Southard's unsupported affidavit, that Western Surety paid this claim without first conducting an investigation. "A self-serving affidavit, without more, is not sufficient to defeat summary judgment." *Jeandron v. Bd. of Regents of Univ. Sys. of Md.*, No. 12-1724, 2013 WL 541044, at *5 (4th Cir. Feb. 14, 2013) (citing *Nat'l Enters., Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (explaining that to withstand a motion for summary judgment, the non-moving party must proffer sufficient evidence on which a reasonable jury could find in its favor). Upon this record, the Court concludes that Defendants have failed to present evidence creating a genuine issue of fact regarding Western Surety's good faith payments to Banks Construction. As there is no question of fact regarding Defendants' breach of the GAI for failure to reimburse Western Surety for the payments to Banks Construction in the amount of $218,028.34, the Court grants summary judgment in favor of Western Surety on its breach of contract claim.

## II.     Claim for Attorneys' Fees

Western Surety seeks summary judgment granting it attorneys' fees expended in enforcing the Indemnitors' obligations under the GAI. Under South Carolina law, attorneys' fees are recoverable only if authorized by contract or statute. *S.C. Dep't of Soc. Servs. v. Tharp*, 439 S.E.2d 854, 856 (S.C. 1994). Paragraph 2 of the GAI requires the Indemnitors to indemnify Western Surety for its "fees of attorneys, whether on salary, retainer or otherwise, and the expense of procuring, or attempting to procure, release from liability, or in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement." Thus, under the terms

7

of the GAI, Western Surety can recover attorneys' fees expended in satisfying claims under the bonds and in prosecuting this lawsuit.

In their response memorandum, Defendants appear to object to the amount of attorneys' fees claimed by Western Surety related to satisfying Cooper River's $40,000 obligation to the Dorchester County Tax Authority. Although Cooper River executed a settlement agreement with the Authority agreeing to pay $40,000 to satisfy claims against itself and Western Surety, Cooper River failed to make the payment to the Authority. Instead, Western Surety paid the $40,000 on March 13, 2013, and took assignment of the Authority's rights under the settlement agreement. Those rights include recovery of attorneys' fees expended in enforcing the agreement. Western Surety claims that as of April 15, 2013, the total attorneys' fees and related expenses totaled $12,452 and likely would increase until resolution of this case.

The Court concludes that under the terms of the GAI, the Settlement Agreement, and the Release and Assignment, Western Surety is entitled to attorneys' fees and expenses incurred in satisfying Cooper River's obligations to the Authority. However, from the evidence presently available to the Court, the Court is unable to determine the amount of attorneys' fees that should be awarded. Accordingly, the Court orders Western Surety to file a brief supplemental memorandum with supporting evidence documenting the attorneys' fees related to satisfying Cooper River's $40,000 obligation to the Dorchester County Tax Authority. Defendants will have five days from the date of Western Surety's supplemental memorandum to file objections.

## CONCLUSION

Based on the foregoing, it is **ORDERED** that Western Surety's Motion for Summary Judgment is **GRANTED** in full as to its Banks Construction claim, and is **GRANTED** as to

attorneys' fees in an amount to be determined after receipt of Western Surety's supplemental memorandum, submitted to the Court within **10 days** from the date of this Order.

    **AND IT IS SO ORDERED.**

                                                                      PATRICK MICHAEL DUFFY
                                                                       United States District Judge

**July 1, 2013**
**Charleston, SC**